## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MISTA TURNER BURGESS, Individually and )
  in her capacity as mother and next friend of  )
  H.M.T., a minor child,  )
             )
      Plaintiff,      )
             )
vs.             )      NO. CIV-07-269-D
             )
CITY OF OKLAHOMA CITY,  et al.,  )
             )
      Defendants.  )

## O R D E R

Before the Court is the motion for summary judgment [Doc. No. 103] of Defendant City of

Oklahoma City ("City").  Plaintiff timely responded to the motion, and the City filed a reply.

Background:

This action is brought pursuant to 42 U. S. C. § 1983 and the Oklahoma Governmental Tort

Claims Act ("GTCA").   Plaintiff Mista Turner-Burgess ("Ms. Turner-Burgess") alleges her

constitutional rights and those of her minor daughter, H.M.T., were violated when H.M.T. was

placed into protective custody during the investigation of an allegation that H.M.T.'s father, John

William Turner ("Turner"), had sexually molested her.   Ms. Turner-Burgess asserts a Fourth

Amendment claim on behalf of H.M.T. alleging H.M.T. was unlawfully seized when she was taken

into protective custody.  She also alleges that her Fourteenth Amendment rights of due process and

familial association were violated when her daughter was placed in protective custody without prior

notice; a claim based on deprivation of familial association rights is also asserted on behalf of

H.M.T.

In her § 1983 claims, Ms. Turner-Burgess sues defendants Houseman and Klika in their

individual capacities.  Individual capacity claims are also asserted against five John Doe defendants who are alleged to be Oklahoma City police officers.[1]  Ms. Turner-Burgess also asserts a GTCA claim against the City, seeking damages for the alleged tortious conduct of the individual defendants in connection with the child molestation investigation.[2]

In her § 1983 claim, Ms. Turner-Burgess seeks to hold the City liable for the constitutional rights violations allegedly committed by others,  alleging  the City's policies and customs led to the deprivation of her constitutional rights and the rights of H.M.T.  The City's § 1983 liability is also premised on the allegation that it negligently and carelessly trained, supervised, and retained Klika and the John Doe defendants, and that it developed and maintained policies and customs with deliberate indifference to the rights of its citizens, as well as a policy and/or custom to inadequately train, supervise, and discipline its police officers, including defendants Klika and Does 1 through 5.  Ms. Turner-Burgess also alleges the City approved or ratified the allegedly unlawful and deliberate, reckless conduct of Klika and Does 1 through 5.

The City seeks judgment on all claims asserted against it, arguing the undisputed material facts establish that, as a matter of law, Ms. Turner-Burgess cannot recover against the City on the asserted claims.  In response, Ms. Turner-Burgess contends material factual disputes preclude summary judgment.

Summary Judgment standard:

Summary judgment shall be granted where the undisputed material facts establish that one

---

[1]She also initially sued the DHS; however, it was dismissed from the action by Order of April 24, 2007 [Doc. No. 32].  The Court file reflects Ms. Turner-Burgess has never identified the John Doe defendants, and these defendants have never been served with process.

[2] Because the DHS has been dismissed from this action, the City is the only remaining defendant against whom the GTCA claims are asserted.

party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.*  The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party.  *Swackhammer v. Sprint/United Mgmt. Co.,* 493 F.3d 1160, 1167 (10th Cir. 2007); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).  However, to establish the existence of a "genuine" material factual dispute, the nonmoving party must present evidence to show more than "some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 45 U.S. 574, 588 (1986).

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action.  *Celotex,* 477 U.S. at 322.  However, it is not the responsibility of the summary judgment movant to disprove the plaintiff's claim; rather, the movant need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citations omitted).

In opposing a summary judgment motion, a plaintiff cannot rely on the allegations in his complaint, his personal beliefs, or conclusory assertions; rather, he must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment

is sought.  Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324.  The facts must be identified by reference

to affidavits, deposition transcripts, or specific exhibits incorporated therein.  *Adler,* 144 F.3d at 671

(citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied,*

506 U.S. 1013 (1992)).  Conclusory arguments in the nonmovant's brief are not adequate to create

an issue of fact, and are insufficient to avoid summary judgment.  *Harvey Barnett, Inc. v. Shidler*,

338 F.3d 1125, 1136 (10th Cir. 2003). It is not the responsibility of the Court to attempt to locate

evidence not cited by a plaintiff which could support her  position.  *Adler,* 144 F.3d at 671.

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry*

*v. T-Mobile USA, Inc.,* 490 F. 3d 1211, 1216 (10th Cir. 2007) (citing *White v. York Int'l Corp*., 45

F.3d 357, 360 (10th Cir.1995)). "In other words, there 'must be evidence on which the jury could

reasonably find for the plaintiff.'" *Id.* (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490

(10th Cir.1995)).

<u>The record before the Court:</u>

In its motion, the City sets out a list of 25 facts which it contends are material and

undisputed.  In response, Ms. Turner-Burgess states she "admits or denies as immaterial" the City's

Fact Statement Nos. 1-7, 9, 10, 11, 14,  and 23-25.   Response at p. 2.  However, she does not

identify the facts she contends are immaterial, nor does she offer any explanation or evidence to

support her contention.  Her response adds nothing to this statement, but proceeds to  set out her

response to the remaining enumerated factual statements which she contends are disputed.

Ms. Turner-Burgess's statement that she "admits or denies as immaterial" some of the City's

fact statements is insufficient to create a dispute regarding those statements.  Pursuant to the Local

Civil Rules of this Court, the party opposing summary judgment must include a statement identifying

the material facts which she contends are disputed, and she must include references to the record which she contends demonstrate a dispute:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

LCvR 56.1(c). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it." *Grynberg v. Total, S. A.,* 538 F. 3d 1336, 1345 (10th Cir. 2008) (citing Fed.R.Civ.P. 56(e) and *Trevizo v. Adams*, 455 F.3d 1155, 1159-60 (10th Cir.2006)).

When challenging the movant's assertion that a fact is undisputed, the responding party has the burden "to ensure that the factual dispute is portrayed with particularity, without...depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F. 3d 1283, 1290 (10th Cir. 2004) (quotations omitted); *Mitchell v. City of Moore*, 218 F. 3d 1190, 1199 (10th Cir. 2000) (court is "not obligated to comb the record" to determine the basis for a claim that a factual dispute exists). If a nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed admitted for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

In this case, Ms. Turner-Burgess fails to specifically identify the basis for denying any of the facts set forth in the City's Fact Statement Nos. 1-7, 9, 10, 11, 14, or 23-25. Accordingly, those facts are admitted for purposes of this motion. These, and additional facts discussed *infra,* are established by the summary judgment record.

Pursuant to the City's statement of undisputed fact Nos. 1-7, Defendant Klika has been employed as an Oklahoma City police officer since 1991. He received more than 700 hours of initial training at the Training Academy, followed by four months of required training with a Field Training Officer. Subjects covered in his Training Academy courses included probable cause, search warrants, search and seizure, interviews and interrogation, civil rights, sexual assaults, criminal investigation of child abuse, child abuse and exploitation investigation, crisis intervention, and sex crime investigation. Thereafter, Klika attended more than 600 hours of in-service training.

In 2002, at his request, Klika transferred from the Operations Bureau to the Investigations Bureau, where he completed the Investigator Training Program; he was assigned to the Sex Crimes Unit of the Person and Property Crimes Division. In 2003, he was transferred at his request to the Youth and Family Services Division of the Domestic Violence Unit, and he remained assigned there at the time of the incidents on which Plaintiff's claims are based.

In its Fact Statement No. 8, the City lists specific police department policies adopted by the City as of April 20, 2005; copies of each listed written policy are attached as exhibits to its brief. The listed written policies are: Mission Statement of the Oklahoma City Police Department, City Ex. 17; Standard of Conduct, City Ex. 18; Respect for Constitutional Rights, City Ex. 19; Discipline, City Ex. 20; Individual Dignity, City Ex. 21; Role of the Individual Officer, City Ex. 22; Nature of Task, City Ex. 23; and Police Action Based on Legal Justification, City Ex. 24.

Ms. Turner-Burgess purports to deny Fact Statement No. 8, but she offers no argument that the listed policies were not in force at the time relevant to this action; in fact, her response mentions only one of the listed policies and accuses Klika of violating that policy. Ms. Turner-Burgess does not challenge the validity or accuracy of the City's exhibits consisting of the text of the listed

policies. Instead, she summarizes her allegations regarding the conduct of Klika, and references exhibits consisting of excerpts from the deposition testimony of Klika and other witnesses. The cited exhibits do not address the police department policies listed in Fact Statement No. 8. Notwithstanding her lengthy response, Ms. Turner-Burgess's argument does not present facts supported by evidence to dispute the City's statement that the policies listed in Fact Statement No. 8 were adopted by the City and in force at the relevant time. Accordingly, Fact Statement No. 8 is deemed admitted for the purpose of this motion.

In Fact Statement No. 9, the City lists specific police department procedures which it states have been adopted. The Court has determined, *supra*, that this statement is deemed admitted. Accordingly, for purposes of this motion, it is undisputed that at the time relevant to Ms. Turner-Burgess's claims the following police department procedures were in effect: Juvenile Procedures, City Ex. 26; Taking a Child into Custody, Ex. 27; Abused/neglected/Abandoned Children, Ex. 28; Sex Offenses, Ex. 29; Rape/Sexual Abuse of Children, Ex. 30; Child Abuse Response and Evaluation Detail, Ex. 31; Discipline, Ex. 34; and Responsibility [for Operations Manual], Ex. 35.

The Court also deems admitted the City's Fact Statement No. 10, which lists specific police department rules adopted and in effect at the relevant time, including Compliance with Policies, Procedures and Rules; Condition of Manual; Truthfulness/Cooperation; and Constitutional Rights. Copies of these rules are submitted, respectively, as City Exs. 36, 37, 38 and 39.

Because Ms. Turner-Burgess has failed to dispute City Fact Statement No. 11, it is established that Defendant Klika and all other Oklahoma City police officers are required to comply with the policies, procedures and rules contained in the Operations Manual. Officers are responsible for keeping the manual provided to them current by adding any revisions to its contents. The parties

agree that Klika obtained his manual in 2000, and was issued and signed receipts for the original manual and subsequent updates.  City Exs. 40-44.

In its Fact Statement Nos. 12 and 13, the City explains the  events leading up to the occurrences on which Ms. Turner-Burgess's claims are based.  The evidence, not disputed by Ms. Turner-Burgess, establishes that the child molestation allegation was received while Klika was investigating a March 12, 2005 domestic violence complaint by Toni Cooper; Ms. Cooper was Turner's girlfriend and the mother of his infant son.  The record before the Court in connection with the three separate summary judgment motions[3] sets out the facts related to the domestic violence investigation.  Those facts are set out at pages 6 through 7 of the Court's separate order addressing Klika's motion for summary judgment; that discussion is adopted and incorporated herein.  It is not disputed that, as a result of the domestic violence investigation, Turner was charged with Domestic Assault and Battery in the Presence of a Child and with Interference with an Emergency Phone Call.[4]

The record before the Court reflects that Ms. Turner-Burgess and Turner were married for approximately five years and were divorced in 2002; in 2005, they shared joint custody of their five-year-old daughter, H.M.T.  Both Ms. Turner-Burgess and Turner were licensed attorneys at the time of the relevant events; she was employed by the Oklahoma County District Attorney, and he was an Assistant Attorney General for the State of Oklahoma.

The record establishes that, during Klika's investigation of the March 12, 2005 domestic violence complaint, Ms. Cooper told Klika she was concerned that Turner might have sexually

---

[3]In addition to the City, defendants Klika and Houseman have each filed summary judgment motions.

[4]The record reflects that Turner pled guilty to these charges.  Klika dep., Klika, Ex. 6, p. 49, lines 17-20; Turner dep. Ex. 1, p. 171-72.  Although the Court refers to exhibits submitted in connection with the other summary judgment motions, these materials are a part of the record before the Court in this case and thus may be considered in connection with the City's motion.  Fed. R. Civ. P. 56(c)(3).

molested her three-year-old son, T.K.C., and Turner's daughter, H.M.T. Ms. Cooper said T.K.C. told her that Turner hurt his bottom with his fingers, and he also hurt H.M.T.'s bottom. Klika received this report verbally and in writing on April 7 and 8, 2005. City Exs. 47 and 48. The record reflects T.K.C. was examined by his pediatrician on April 8, and she reported T.K.C. said Turner touched his bottom and was "digging in" H.M.T.'s bottom. The pediatrician reported T.K.C. had an anal fissure, but she told Klika she could not determine whether the fissure was caused by sexual abuse. Pediatrician report, submitted under seal as Klika Ex. 12.[5]

The evidence in the record reflects that, upon receipt of this report, Klika consulted with his supervisor, Lt. Blosser, to determine how to proceed with an investigation. After Lt. Blosser consulted with his superiors and with the Child Abuse Unit of the Oklahoma City police department, it was decided that Inspectors Patricia Helm and Teresa Sterling of the Child Abuse Unit would be assigned to assist Klika in investigating the child molestation allegation. As set out in more detail in the Court's order addressing Klika's summary judgment motion, Helm, Sterling, and Klika then began investigating the possible molestation of T.K.C. and H.M.T.

The record establishes that, at the relevant time, Inspector Helm had been an Oklahoma City police officer for 15 years, and had been assigned to the Child Abuse Unit for 10 years. Helm search warrant affidavit, City Ex. 51, p. 2. She had more than 500 hours of training specifically devoted to such investigations, and had investigated or assisted in investigating many child abuse allegations.

The record also reflects that, in addition to being assigned to the Child Abuse Unit, Inspector Sterling has testified as an expert witness in child abuse cases and has been lead investigator in

---

[5]Although the City does not cite this report, it is submitted by other parties in this case and is part of the record before the Court.

thousands of child abuse investigations.  She has taught courses on the subject, and is a qualified forensic interviewer in child abuse cases.  Sterling dep., City Ex. 53, pp. 17-19.

The record further establishes that, when Helm became involved in the investigation, she made arrangements to again interview Ms. Cooper and Dawn Miller[6], another former girlfriend of Turner.  Helm also interviewed T.K.C.'s grandmother.  The resulting statements are summarized in Helm's affidavit for the warrant to search Turner's residence, which also summarizes the witness statements obtained by Klika during his investigation of the domestic violence complaint.  *See* Helm affidavit in support of search warrant, City Ex. 51, pp. 6-9; 10-14.

During the investigation of the child molestation allegation, Ms. Cooper's son, T.K.C., was interviewed by a forensic interviewer, Vicki Gauldin, at the Child Abuse Response and Evaluation ("CARE") Center. Ms. Gauldin's report summarizing the interview is submitted as Klika Ex. 15; the interview was videotaped.  Prior to interviewing T.K.C., Ms. Gauldin did not review the reports of other interviews conducted by Klika or Helm. Although Inspector Helm and DHS Social Worker Houseman observed the interview, they did not participate.  During the interview, T.K.C. told Ms. Gauldin that Turner put "red juice" and cream on T.K.C.'s bottom and that it hurt when Turner touched that part of his body.  Klika Ex. 15, p. 2; Klika Ex. 7, pp. 15-16.

It is not disputed that, on April 20, 2005, H.M.T. was taken by Inspector Sterling and DHS Social Worker Houseman to the CARE Center to be interviewed by forensic interviewer Vicki Gauldin, who had previously interviewed T.K.C. Sterling dep., City Ex. 53.   Ms. Gauldin's report is contained in the record in this case as Klika Ex. 16.  Ms. Gauldin stated she did not review any

---

[6]Both Ms. Cooper and Ms. Miller had been interviewed by Klika in connection with the domestic violence investigation, but those interviews occurred prior to the sexual molestation allegation.  The interviews, along with Klika's interview of Ms. Turner-Burgess, are reported in the crime report submitted as City Ex. 57.

police reports prior to interviewing H.M.T.; although Inspector Sterling and Houseman observed the interview, they did not participate. *Id.*

It is not disputed that, prior to April 20, Ms. Turner-Burgess was not notified of the allegation that H.M.T. had been sexually molested by Turner, nor was she notified in advance that H.M.T. was being interviewed at the CARE Center. At approximately the same time as the interview was being conducted, Klika met with Ms. Turner-Burgess and advised her of the allegation that Turner had molested H.M.T. He also told her an investigation would be conducted by DHS, and there would be a hearing to determine the status of H.M.T.'s custody on the following day. Klika dep., Ex. 6, pp. 219-220, 224; Turner-Burgess dep., Klika Ex. 4, p. 54. There is no dispute that Ms. Turner-Burgess was not given written notice of the hearing.

Klika testified in his deposition that, based on this interview with Ms. Turner-Burgess, he was convinced Ms. Turner-Burgess would protect H.M.T. from future possible abuse and that H.M.T. should be released to her[7]. He talked with Houseman to convey his opinion, but he learned that Inspector Sterling's supervisor, Lt. Darla Dugan, had already made the decision to place H.M.T. in protective custody. Klika dep., 6, pp. 116, 141-42. The record reflects Lt. Dugan made that decision after receiving a report of Gauldin's April 20 interview with H.M.T.

H.M.T. was taken into protective custody on April 20, and spent the night at the DHS shelter. On the morning of April 21, 2005, Ms. Turner-Burgess obtained an Emergency Temporary Order granting her temporary sole custody of H.M.T., pending the outcome of the DHS investigation. Turner expressly agreed to that order, but denied any inappropriate conduct involving H.M.T. A

---

[7]Klika had previously expressed concern that, based on his interview with her concerning the domestic violence complaint, Ms. Turner-Burgess appeared protective of Turner.

copy of the Order is submitted as  Klika Ex. 18.  The Order directed Ms. Turner-Burgess to "keep the minor child way from and out of complete contact with" Turner and to not restore his visitation rights until the DHS investigation concluded with a determination that Turner "is fit and capable of resuming custody."  *Id.*   The custody arrangement was further altered by subsequent Oklahoma County District Court orders.  On June 22, 2005, an Order was issued pursuant to a motion filed by Turner; in that Order, the Court noted DHS did not object to Turner having supervised visitation with H.M.T., with Ms. Turner-Burgess serving as the supervisor.  Klika Ex. 19.  Subject to continued DHS oversight, a specific schedule of supervised visitation was set out in the Order, and a guardian ad litem was appointed for H.M.T.  *Id.*   On August 8, 2005, an Order Modifying Temporary Emergency Order was entered upon the joint request of Ms. Turner-Burgess and Turner.  Klika Ex. 20.  The Order allowed Turner to have overnight visitation with H.M.T., to be supervised by a third party until further Court order; Turner and Ms. Turner-Burgess were authorized to agree to the third party who would act as supervisor. *Id.* The Order also directed DHS to "release all further decisions affecting the minor child's custody to the parties and this Court," and it provided DHS was no longer required to receive notices of court proceedings.  Klika Ex. 20.

There is no evidence in the record that Klika or any other Oklahoma City police officer participated in the foregoing court proceedings or had any involvement in the preparation of the resulting court orders.

It is not disputed that the police and DHS continued investigating the child molestation allegation after April 20.  Upon completion of the investigation, Helm and Klika presented a report to the Oklahoma County District Attorney, who declined to file criminal charges against Turner.

Application:

Section 1983 claims:

To prevail on a § 1983 claim, a plaintiff must prove: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [law]." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Construing Ms. Turner-Burgess's allegations against the City most liberally in her favor, she seeks to hold it liable under § 1983 on the following bases: 1) the police department policies and procedures applicable to this case are unconstitutional; 2) the City failed to properly train and supervise defendant Klika and the John Doe defendants; and 3) the City ratified the allegedly unconstitutional conduct of Klika and the John Doe defendants.

A municipality cannot be held liable for the unconstitutional conduct of its employees under a theory of *respondeat superior.  Monnell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978); *Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F. 3d 1175, 1188 (10th Cir. 2010) (citing *Pembaur v. City of Cincinnati*, 475 U. S. 469, 480 (1986)).  Instead, a municipality is liable under §1983 only where the employee's unconstitutional conduct occurred while he was carrying out a policy or custom established by the municipality, and there is a direct causal link between the policy or custom and the injury alleged. *Bryson v. City of Oklahoma City*, 627 F. 3d 784, 788 (10th Cir. 2010) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993) (internal citation omitted)).

The Tenth Circuit has determined that the municipal policy or custom required to support §1983  municipal liability must be based on evidence of one of the following:

(1) "a formal regulation or policy statement;" (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;'" (3) "the decisions of employees with final policymaking authority;" (4) "the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval;" or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir.2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) and *City of Canton v. Harris*, 489 U.S. 378, 388-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (internal quotation marks omitted).

*Bryson*, 627 F. 3d at 788. As a general rule, " a single incident of unconstitutional conduct is not enough. Rather, a plaintiff must show that the incident resulted from an existing, unconstitutional policy attributable to a municipal policymaker." *Nielander v. Board of County Comm'rs*, 582 F.3d 1155, 1170 (10th Cir. 2009) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). A plaintiff may pursue municipal liability on the basis of a single incident only if he shows "the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss v. Kopp,* 559 F. 3d 1155, 1169 (10th Cir. 2009) (citing *Jenkins v. Wood*, 81 F. 3d 988, 994 (10th Cir. 1996)).

In this case, Ms. Turner-Burgess alleges in the Second Amended Complaint that the City should be liable under § 1983 because 1) it adopted unconstitutional police department policies and procedures; 2) it failed to adequately train Klika and other officers; and/or 3) it ratified the unconstitutional conduct of the officers involved in the child molestation investigation. Each of these contentions is examined in light of the evidence and the applicable law.

Unconstitutional municipal policy:

A municipality may be liable under § 1983 if it "has adopted an unconstitutional law, custom,

or policy." *Christensen v. Park City Municipal Corp.*, 554 F. 3d 1271, 1275 (10th Cir. 2009); *see also Monnell*, 436 U.S. at 690.   To show liability on this basis, a plaintiff may argue the policy is facially unconstitutional or that it is unconstitutional as applied to him. *Christensen*, 544 F.3d at 1280.   Municipal liability on this basis is not supported where a police officer, carrying out a discretionary duty,  enforces a constitutional municipal policy in an unconstitutional manner. *Id.*

 Similarly, if a plaintiff shows that a constitutional policy affirmatively caused a series of unconstitutional incidents, the municipality adopting that policy may be liable under § 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). In either case, the policy must be the "moving force" behind the alleged constitutional violation. *Tuttle*, 471 U.S. at 818; *Monnell*, 436 U.S. at 691. In such cases, the initial  inquiry is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton v. Harris*, 489 U.S. 378, 385 (1989).

Although Ms.Turner-Burgess alleges in this case that the City maintained unconstitutional policies which are relevant to her claims, her response brief fails to identify any policy on which that allegation is based.   She offers no argument or evidence in support of this contention; instead,  she focuses on allegations directed at Klika and others whose conduct allegedly violated her rights and those of H.M.T.  Assuming, as she alleges, that  Klika and other unidentified police officers engaged in conduct consistent with City policies or procedures but that they did so in an unconstitutional manner, that is not sufficient to render the City liable unless the policies or procedures they were applying were unconstitutional. *Christensen,*  544 F.3d at 1280.   Ms. Turner-Burgess has failed to offer argument or evidence to show any City policies or procedures  were unconstitutional.  To the extent she seeks to hold the City liable because it adopted unconstitutional policies or procedures, the City's motion for summary judgment is granted.

15

Failure to train or supervise police officers:

Where law enforcement conduct is at issue, §1983 municipal liability may also be premised on a failure to train or supervise personnel. *Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997). A municipality may be held liable for "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter*, 602 F. 3d at 1190(citations omitted). The Tenth Circuit has explained the evidence required to establish deliberate indifference for this purpose:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Bryson*, 627 F. 3d at 789 (citing *Barney v. Pulsipher*, 143 F. 3d 1299, 1307-08 (10th Cir. 1998)). Evidence that police officers violated certain policies is not, without more, sufficient to show the officers were inadequately trained; instead, "a municipality's failure to train 'must reflect a deliberate or conscious choice by the municipality.'" *Zuniga v. City of Midwest City,* 68 F. App'x 160, 164 (10th Cir. 2003) (unpublished opinion) (quoting *Barney,* 143 F. 3d at 1307).

Although Ms. Turner-Burgess alleges in this case that the City failed to adequately train and supervise defendant Klika and the unidentified other police officers, and that the City did so with deliberate indifference, she has failed to articulate the basis for this contention. She points to no evidence demonstrating a lack of training. Nor does she offer evidence or legal authority to show, as required by the Tenth Circuit, that the City's inadequate training demonstrated its deliberate

16

indifference to the constitutional rights of its citizens.  The City's undisputed evidence shows that Klika and other officers were required to participate in specific training throughout their careers as police officers, including training on subjects relevant to the circumstances of the investigation in this case.  The required training included, *inter alia*, subjects related to constitutional rights as well as specific rights to be observed in connection with the matters that arose during this investigation. Its undisputed fact statements identify Klika's training in subjects directly related to the appropriate investigation of child abuse allegations; it also lists numerous training courses related to search and seizure, arrest,  and protection of citizen rights.   Ms. Turner-Burgess  does not dispute that such training was required or that  Klika attended the required courses.

The Court concludes that Ms. Turner-Burgess has failed to offer evidence sufficient to create a material factual dispute regarding the City's alleged failure to train Klika or other officers involved in this case.

With respect to her allegation that the City failed to properly supervise Klika, Ms. Turner-Burgess points to no evidence suggesting that the City was on notice of any performance deficiencies or alleged improprieties in Klika's conduct prior to this incident.  There is no evidentiary basis  for a contention that the City had actual or constructive notice of a pattern of unconstitutional behavior by Klika or any other law enforcement officer involved in this case.   Nor does Ms. Turner-Burgess offer evidence to show that the City had actual or constructive notice that the specific circumstances presented in this case were likely to result in a violation of constitutional rights by Klika or any other police officer involved in the investigation.

Ms. Turner-Burgess has failed to present evidence sufficient to create a material fact dispute regarding the City's potential § 1983 liability on the claims, asserted on her own behalf and on behalf

of H.M.T., that the City failed to properly train or supervise Klika and the other officers.  The City is entitled to judgment on these claims.

Ratification of unconstitutional conduct:

A municipality may be liable under § 1983 if it ratifies an employee's unconstitutional conduct.  To support liability on this basis, however, a plaintiff must show "ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Bryson*, 627 F. 3d at 788 (citations omitted).  "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Id.* at 790.  Ratification occurs where "a subordinate's position is subject to review by the municipality's authorized policymakers," and those policymakers "approve a subordinate's decision and the basis for it." *Moss v. Kemp*, 559 F. 3d 1155, 1169 (10th Cir. 2009) (citing *Melton v. City of Oklahoma City,* 879 F. 2d 706, 724 (10th Cir. 1989)).  Where the employee has discretion to exercise certain functions, however, liability based on ratification does not attach.  *Penbaur v. City of Cincinnati,* 475 U.S. 469, 482 (1986).  Moreover, even if a violation is found to have occurred, municipal liability cannot be based on a single incident of failure to impose discipline. *Butler v. City of Norman*, 992 F. 2d 1053, 1056 (10th Cir. 1993) ("we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monnell*").

In this case, the undisputed facts establish that Klika and others investigated the child molestation allegation in accordance with their discretionary duties as police officers.  In its separate order addressing Klika's motion for summary judgment on the claims asserted against him by Ms.

Turner-Burgess, the Court has concluded that Klika did not violate her constitutional rights or those of H.M.T.  However, even if the Court had concluded there was sufficient evidence to render Klika potentially liable, that conclusion would not form a basis for the City's liability on a theory that it somehow ratified his conduct by failing to discipline him.  Ms. Turner-Burgess does not offer evidence to show that Klika had a history of unconstitutional conduct which was ignored by the City. Even if the City failed to discipline him in this matter, one incident of failure to discipline is insufficient to render the City liable.

Having reviewed the evidence in the record most favorably to Ms. Turner-Burgess, the Court concludes that she has failed to present evidence and authority sufficient to create a material fact dispute regarding the City's liability under § 1983.  In contrast, the City has presented extensive legal argument regarding the potential bases for § 1983 liability, and has submitted evidence in support of its contention that Ms. Turner-Burgess cannot sustain her burden on any of these bases.  The City's motion for summary judgment is granted as to the § 1983 claims asserted against it.

GTCA Liability:

Ms. Turner-Burgess also asserts  tort claims against the City, arguing that it is liable for the conduct of Klika and other police officers under the GTCA.  The City seeks summary judgment on these claims.

Tort actions asserted against a municipality and its employees are governed by the GTCA, Okla. Stat. tit. 51, § 151, *et seq*.  The GTCA is the exclusive means by which an injured plaintiff may recover tort damages from a political subdivision of the state,  including a municipality.  *Fuller v. Odom*, 741 P. 2d 449, 451 (Okla. 1987); Okla. Stat. tit. 51, § 153(B).  However,  a political subdivision is liable only for the torts committed by its employee while that employee was acting

within the scope of his employment.   51 Okla. Stat. § 163(C); *see also Carswell v. Oklahoma State University*, 995 P. 2d 1118, 1123 (Okla. 1999).   The GTCA defines  "scope of employment" as "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud." Okla. Stat. tit. 51 § 152(9).  Conduct outside a police officer's scope of employment requires a finding that "the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess." *DeCorte v. Robinson* 969 P. 2d 358, 361-62 (Okla. 1998) (quotation omitted).

The GTCA imposes liability on a political subdivision only "to the extent and in the manner provided" in the GTCA.  Okla. Stat. tit. 51, § 152.1(B).   As the City correctly argues in its motion, the GTCA contains specific exemptions by which a political subdivision is not liable even for good-faith conduct of its employee.  Okla. Stat. tit. 51, § 155.   The City argues that Ms. Turner-Burgess's allegations of tortious conduct are subject to these exemptions.

To the extent the allegations of tortious conduct by City employees are based on the police involvement in the April 20, 2005 placement of H.M.T. in protective DHS custody, the City contends it cannot be liable because its employees were acting in pursuit of a criminal investigation of sexual abuse of a child.  The GTCA contains a specific  exemption which provides in pertinent part that a political subdivision "shall not be liable if a loss or claim results from...adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Okla. Stat. tit. 51 § 155(4).   Relying on *Skurnack v. State ex. Rel. Department of Human Services,*

46 P. 3d 198, 200-01 (Okla. Civ. App. 2002), the City argues that § 155(4) precludes liability for the actions of employees investigating child abuse because the investigation is an action to enforce Oklahoma laws regarding protection of children who may be victims of child abuse.

In *Skurnack,* DHS employees received a report of child abuse or neglect and, pursuant to their duty under Okla. Stat. § 7106(A)(1)[8] to promptly investigate such allegations, attempted to interview the subject children.  The parents refused to voluntarily consent to the interview, and DHS obtained a court order, ultimately placing the children in DHS custody pending its investigation.  The court later found they were not deprived or abused, and the children were returned to their parents. The parents sued the DHS alleging its employees acted tortiously in placing the children in DHS custody.   DHS argued it was immune from liability under GTCA § 155(4) because its employees were fulfilling a statutory duty to investigate child abuse allegations.  The Court of Appeals agreed, affirming the state court's grant of summary judgment in favor of the DHS.  *Id.* at 201.

In her response, Ms. Turner-Burgess argues that, pursuant to *Oklahoma Dept. of Public Safety v. Gurich*, 238 P. 3d 1 (Okla. 2010), the GTCA does not provide "blanket immunity" where an employee negligently performs a law enforcement function, notwithstanding § 155(4). The Court in *Gurich* was faced with the question whether the GTCA extended immunity to the Department of Public Safety when a Highway Patrol Officer engaged in a high-speed pursuit resulting in the death of an innocent bystander.  The court held an officer engaged in a pursuit owes a duty of care to an innocent bystander; thus, if he engages in a pursuit with reckless disregard for the safety of bystanders, his employer may be liable for his negligence.  *Id.* at 8.  Underlying its decision was the

---

[8]The cited statute has since been recodified, and the statutory duties regarding investigation of  child abuse allegations are now set forth at Okla. Stat. tit. 10A § 1-2-105, *et seq.*

determination that "reckless disregard" is the proper standard of care for evaluating whether the driver of an emergency vehicle breached a duty to others; mere negligence is an insufficient standard in such circumstances. *Gurich*, 238 P. 3d at 7. Ms. Turner-Burgess argues that, pursuant to *Gurich*, the City is not immune from liability for any of the alleged tortious acts of Klika in connection with the investigation of child molestation allegations in this case.

The Court does not find Ms. Turner-Burgess's argument persuasive as applied to the facts of this case. Although *Gurich* holds that § 155(4) does not automatically shield a political subdivision from GTCA liability in all cases, it addressed a specific immunity claim involving high speed pursuits by law enforcement officers. In contrast, this case involves application of Oklahoma's statutory scheme requiring investigation of sexual abuse allegations. The Court does not interpret *Gurich* as broadly as Ms. Turner-Burgess suggests, and thus does not conclude that it must be read as precluding immunity for the City under the facts of this case.

The Court notes that Ms. Turner-Burgess argues at length that Klika intentionally and wrongfully sought to violate her rights in his conduct during the investigation. She, in fact, argues in her response that "the facts indicate that Klika's actions were not in good faith." Response, p. 30. As the City points out in its reply, the GTCA does not impose liability upon a municipality for the conduct of its employees who were not acting in good faith. Okla. Stat. tit. 51 § 152(12). Thus, if her argument is accepted, the City cannot be liable as a matter of law.

Having reviewed the record and the governing law, the Court concludes that Ms. Turner-Burgess has failed to submit evidence sufficient to create a material fact dispute regarding the City's potential liability under the GTCA. The City's motion for summary judgment is granted as to the state law claims asserted.

Conclusion:

For the reasons set forth herein, the City's motion for summary judgment [Doc. No. 103] is

GRANTED as to all claims asserted against it in this case.

IT IS SO ORDERED this 30th day of September, 2011.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE